UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIDORI KONDO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHELIO HEALTH CARE<br>SOLUTIONS, INC., et al.,<br><br>Defendants. | Case No.  15-cv-03244-DMR<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO TRANSFER**<br><br>Re: Dkt. No. 9 |

Defendants Anthelio Healthcare Solutions Inc. ("Anthelio") and Asif Ahmad move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court, Northern District of Texas, seeking to enforce a forum selection clause.  [Docket No. 9.]  For the following reasons, the court denies the motion to transfer.

I.      **BACKGROUND**

In October 2013, Plaintiff Midori Kondo began negotiations regarding the sale to Anthelio of intellectual property developed by Kondo's company, Plaintiff Health Matrix, IT ("HMIT"). On February 23, 2014, Kondo executed a series of agreements with Anthelio regarding the sale. These agreements included an asset purchase agreement ("APA"), which was conditioned on her execution of an "employment letter," a non-compete agreement ("NCA"), and a bill of sale.

The employment letter offered Kondo the position of Vice-President of Analytics, reporting to Defendant Asif Ahmad, Anthelio's CEO.  It outlined Kondo's base salary and compensation, which was dependent in part on whether she could achieve certain milestones, and also included a relocation allowance.  The letter further stated that the job offer was conditioned upon Kondo's signing the NCA, since her employment would provide her with access to Anthelio's confidential information.

The NCA contains a forum selection clause providing that "[v]enue for any action pursuant

to this Agreement shall be in District Court in Dallas County, Texas." NCA at ¶ 3.2. The APA, NCA, and bill of sale each contain a choice of law provision stating that the agreement shall be governed by Texas law. The employment letter does not contain a forum selection clause or choice of law provision.

During the parties' negotiations, Anthelio and Ahmad allegedly represented to Kondo that Anthelio had certain technological infrastructure in place, including "a data warehouse with sufficient source data to adequately test their applications and a business development team to handle marketing, pricing and other related services." Am. Compl. ¶ 12. Kondo alleges that she relied on these representations when entering into the APA. However, after beginning work at Anthelio, she realized it "did not have the data warehouse or any of the source data necessary to test and run her software applications, nor did it have the sales resources necessary to bring the applications to market." *Id.* at ¶¶ 13, 16. She asserts that the lack of data warehouse and sales and marketing support prevented her from achieving the milestones outlined in her employment letter. As a result, Kondo was demoted and put on a performance plan. Kondo resigned from her employment with Anthelio on May 19, 2015.

Kondo and HMIT filed suit against Anthelio and Ahmad in Alameda County Superior Court. Their amended complaint contains the following eight causes of action: 1) fraud; 2) negligent misrepresentation; 3) rescission of the APA; 4) breach of contract, based on the APA and employment "agreement"; 5) restitution; 6) accounting of the royalties allegedly due Kondo under the APA; 7) declaratory relief, seeking a declaration that the NCA is unenforceable under California law; and 8) violation of California Labor Code section 203. Defendants removed the case to this court and now seek to transfer the case to the Northern District of Texas, Dallas Division, in accordance with the forum selection clause in the NCA. In the alternative, Defendants argue that the convenience of the parties and witnesses supports a transfer of the case to the Northern District of Texas.

## II.     LEGAL STANDARD

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

United States District Court
Northern District of California

1    where it might have been brought or to any district or division to which all parties have

2    consented."  Section 1404(a) "does not condition transfer on the initial forum's being 'wrong' . . .

3    [a]nd it permits transfer to any district where venue is also proper . . . or to any other district to

4    which the parties have agreed by contract or stipulation."  *Atl. Marine Const. Co. v. U.S. Dist.*

5    *Court*, 134 S. Ct. 568, 579 (2013).  Forum selection clauses may be enforced through a motion to

6    transfer under § 1404(a).  *Id.*

7         "In the typical case not involving a forum selection clause, a district court considering a

8    [Section] 1404(a) motion . . . must evaluate both the convenience of the parties and various public-

9    interest considerations.  Ordinarily, the district court would weigh the relevant factors and decide

10   whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and

11   otherwise promote 'the interest of justice.'"  *Id.* at 581 (quoting Section 1404(a)).  However, "the

12   calculus changes … when the parties' contract contains a valid forum selection clause."  *Id.*  Such

13   a clause "represents the parties' agreement as to the most proper forum" and its enforcement

14   "protects their legitimate expectations and furthers vital interests of the justice system."  *Id.* at 582

15   (quotations omitted).  For that reason, "a valid forum selection clause should be given controlling

16   weight in all but the most exceptional cases."  *Id.* (citation and brackets omitted).  "Thus, if there

17   is a valid forum selection clause, then the Plaintiff bears the burden of showing exceptional

18   circumstances unrelated to the convenience of the parties that make transfer inappropriate."  *T &*

19   *M Solar & Air Conditioning v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868 (N.D. Cal. 2015) (citing

20   *Atlantic Marine*, 134 S.Ct. at 581).

21        The Supreme Court instructs that the presence of a valid forum selection clause requires

22   district courts to adjust their usual Section 1404(a) analysis in three ways:

23            First, the plaintiff's choice of forum merits no weight.  Rather, as the
              party defying the forum-selection clause, the plaintiff bears the
24            burden of establishing that transfer to the forum for which the
              parties bargained is unwarranted. . . .
25

26            Second, a court evaluating a defendant's § 1404(a) motion to
              transfer based on a forum-selection clause should not consider
27            arguments about the parties' private interests.  When parties agree to
              a forum selection clause, they waive the right to challenge the
              preselected forum as inconvenient or less convenient for themselves
28            or their witnesses, or for their pursuit of the litigation.  A court

United States District Court
Northern District of California

3

United States District Court
Northern District of California

accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

Third, when a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . .

*Id.* at 581-82.

The Supreme Court recognized that its analysis in *Atlantic Marine* "presupposes a contractually valid forum selection clause." *Id.* at 579 n. 5. "[F]orum selection clauses are presumptively valid" unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

## III.   DISCUSSION

### A.   Applicability of the Forum Selection Clause in the NCA

Defendants ask the court to enforce the forum selection clause contained in the NCA, which provides:

If either party commences any legal action against the other party arising out of this Agreement, the prevailing party shall be entitled to recover its reasonable expenses, including, without limitation, court costs and reasonable attorney's fees. *Venue for any action pursuant to this Agreement shall be in District Court in Dallas County, Texas.*

NCA at ¶ 3.2 (emphasis added). This is the sole forum selection clause in the parties' agreements. Plaintiffs argue that the forum selection clause in the NCA is inapplicable to this litigation because the gravamen of their complaint is that Defendants breached the APA (which does not contain a forum selection clause), made fraudulent misrepresentations, and violated the California Labor Code. In other words, Plaintiffs argue that this is not an "action pursuant to" the NCA, as required by the express language of the forum selection clause.

The effect and scope of a contractual forum selection clause in a diversity case is governed by federal law. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512-13 (9th Cir. 1988). In

the Ninth Circuit, while "forum selection clauses can be equally applicable to contractual and tort causes of action . . . [w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."  *Id*. at 514 (holding that tort claims fell within scope of forum selection clause because they related to the "rights and duties enumerated in the" parties' contract and to "the central conflict over the interpretation" of the contract).

Here, Plaintiffs' claims are for 1) fraud in connection with Plaintiffs' sale of intellectual property to Anthelio; 2) negligent misrepresentation based on Defendants' representations about its data warehouse and business development resources; 3) rescission of the APA; 4) breach of contract, based on the APA and employment letter; 5) restitution based on the benefits Anthelio obtained through the APA; 6) accounting of the royalties allegedly due Kondo under the APA; 7) declaratory relief, seeking a declaration that the NCA is unenforceable under California law; and 8) violation of California Labor Code section 203.  With the sole exception of Plaintiffs' seventh claim for declaratory relief, the remaining contract and tort claims do not require or relate to the interpretation of the NCA because they are based upon Plaintiffs' allegations that Defendants fraudulently induced them to enter into, and then subsequently breached, the APA.  A factfinder will not need to examine and interpret the NCA regarding the parties' intended rights and obligations under the APA and employment letter.  *Compare Manetti-Farrow*, 858 F.3d at 514 (holding that tort claims were within scope of forum selection clause because "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract.").

However, as to Plaintiffs' claim for declaratory relief, Plaintiffs seek a determination that the NCA violates the statutes and public policy of the State of California and is unenforceable. Am. Compl. ¶¶ 58, 59.  This claim unquestionably will require the factfinder to examine and interpret the NCA to determine its enforceability, and is thus governed by the forum selection clause.

At the October 15, 2015 hearing, Plaintiffs indicated that they would consider abandoning their claim for declaratory relief.  The following day, Plaintiffs' counsel filed a declaration with Plaintiffs' assent to dropping the declaratory relief claim.  [Docket No. 19 (Waste Decl., Oct. 16,

1    2015).]  They subsequently filed a proposed second amended complaint that omits that claim.

2    [Docket No. 22.]  Accordingly, since Plaintiffs no longer seek declaratory relief related to the

3    enforceability of the NCA, and since the resolution of Plaintiffs' remaining claims does not

4    "relate[] to interpretation" of the NCA, Plaintiffs' claims fall outside the scope of the forum

5    selection clause.

6         In their reply, Defendants argue that pursuant to California Civil Code section 1642, the

7    APA and NCA together comprise one contract; therefore, all provisions of the agreements,

8    including the forum selection clause, must be enforced accordingly.[1]  Section 1642 provides that

9    "[s]everal contracts relating to the same matters, between the same parties, and made as part of

10   substantially one transaction, are to be taken together."  The court need not consider this argument

11   as it was made for the first time in Defendants' reply brief.  Moreover, even if Defendants had

12   properly raised the applicability of section 1642 in their motion, the outcome would remain the

13   same, because "it is a question of fact as to whether several writings comprise one transaction" for

14   purposes of section 1642.  *Nevin v. Salk*, 45 Cal. App. 3d 331, 338 (1975) (citation omitted); *see

15   also Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 534 (2008).  Therefore, the applicability of section

16   1642 presents a question of fact which cannot be resolved on a motion to transfer.

17        **B.    Section 1404(a) Factors**

18        Since the forum selection clause in the NCA does not apply to this action, the court must

19   determine if a transfer is proper under 28 U.S.C. § 1404(a) using a two-step analysis.  *Park v. Dole

20   Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013).  The court must first

21   consider the threshold question of whether the case could have been brought in the forum to which

22   the moving party seeks to transfer the case; i.e. the Northern District of Texas.  *See id.*; *see also

23   Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  If Defendants make this showing,

24   then the court must make an "individualized, case-by-case consideration of convenience and

25   fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v.

26   Barrack*, 376 U.S. 612, 622 (1964)).

27   _____

28   [1] Defendants repeat this argument in a document titled "Sur-Reply to Plaintiffs' Opposition,"
     (Docket No. 21), which was filed without the court's permission.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      The parties agree that this case could have been filed in the Northern District of Texas,

2  which is the location of Anthelio's principal place of business.  Accordingly, the court will

3  consider the convenience of the parties, the convenience of the witnesses, and the interest of

4  justice.  *Park*, 964 F. Supp. 2d at 1093 (citing 28 U.S.C. § 1404(a)).  Factors that the court may

5  consider include: (1) the location where the relevant agreements were negotiated and executed; (2)

6  the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the

7  respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of

8  action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the

9  availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8)

10  the ease of access to sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th

11  Cir. 2000).  The relevant public policy of the forum state is also "a significant . . . factor in the §

12  1404(a) balancing."  *Id.* at 499.  "The defendant must make a strong showing of inconvenience to

13  warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison

14  Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

15      Here, Plaintiff Kondo resides in California, while Defendants are located in the Northern

16  District of Texas.  Significant operative facts occurred in both districts, as well as elsewhere.  For

17  example, it appears that Kondo was in Washington State when she negotiated and executed the

18  contracts with Anthelio, which was in Texas.  (Ahmad Decl., July 21, 2015, ¶ 8.)  Kondo then

19  relocated to the Northern District of California in February 2015, where she performed her

20  employment duties until she resigned in May 2015.  (Ahmad Decl. ¶ 9; Kondo Decl., Aug. 4,

21  2015, ¶ 5.)  Anthelio closed the office in which Kondo worked in California in June 2015, after

22  she resigned.  (Ahmad Decl. ¶ 9.)

23      As to the convenience of the parties, since Kondo resides in California and Anthelio is

24  located primarily in Texas, one party will be inconvenienced by either venue.  "The convenience

25  of witnesses is often the most important factor in deciding whether to transfer an action."  *Getz*,

26  547 F. Supp. 2d at 1083.  However, the Ninth Circuit has also noted that "the location of evidence

27  and witnesses . . . is no longer weighed heavily given the modern advances in communication and

28  transportation."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  Both

United States District Court
Northern District of California

1  parties claim to have a majority of witnesses located in their preferred venue.  Plaintiffs claim

2  thirteen key witnesses are or were in California, and name over ten additional witnesses located in

3  states other than California and Texas.  (Kondo Decl. ¶¶ 6, 7.)  According to Defendants,

4  Anthelio's Texas headquarters "is the actual center of direction, control, and coordination of all

5  major human resources, payroll, legal, financial, and administrative functions of Anthelio," and

6  the officers for these departments are located in Texas.  (Ahmad Decl. ¶ 4.)  Defendants also name

7  seventeen witnesses with relevant information and knowledge about the facts in this case who

8  reside and work in Texas.  (Ahmad Decl., Aug. 8, 2015 (2d Ahmad Decl.), ¶ 5.)

9      Defendant argues that the "key witnesses" are located in Texas, citing *Sloan v. Pfizer*, No.

10  C 08-1849 SBA, 2008 WL 4167083, at *5 (N.D. Cal. Sept. 8, 2008), in which the court considered

11  the "nature and quality" of witness testimony, in addition to their location in the respective venues.

12  However, the limited information provided by the parties about each witness's knowledge and

13  information does not tip the balance of this factor in either party's favor.  Additionally, the court in

14  *Sloan* also noted that "the convenience of employee witnesses is not as important of a factor as the

15  convenience of non-party witnesses."  *Id*.  Plaintiffs cite a number of non-party witnesses who are

16  based in California who may offer their opinions about the technical aspects of Plaintiffs'

17  performance and Defendants' alleged nonperformance under the APA.  (*See* Kondo Decl. ¶ 6.)

18  Therefore, the location of witnesses does not favor a transfer to Texas.

19      The parties also dispute the location of the evidence in the case.  Plaintiffs claim the

20  majority of the evidence is located on servers owned and maintained by Kondo in Pleasanton,

21  California, along with her hard copy files.  (Kondo Decl. ¶ 5.)  Defendants respond that any

22  maintenance of company documents and files on her servers violated Anthelio policy, and that

23  during Kondo's employment, her company emails, company documents and company information

24  were stored on Anthelio's servers located in Texas and Missouri.  (2d Ahmad Decl. ¶ 4.)  The

25  location of the evidence is not dispositive here.

26      As to the governing law, the parties do not dispute that Texas law applies to this action.  "It

27  is appropriate and favored to try a diversity case in a forum that is comfortable with the state law

28  that must govern the case."  *Id. citing Van Dusen*, 376 U.S. at 645.  However, this court is

8

confident that any federal court can comprehend and apply the law of either state, a task which federal courts are routinely required to do.  Thus, this factor weighs only slightly in favor of transfer.  This rule does not carry more weight than plaintiff's strong preference for venue or the convenience of non-party witnesses, and the parties do not address the remaining discretionary factors described in *Jones*.  Given the court's broad discretion, and the fact that the balance of the § 1404(a) factors does not strongly favor Defendants, the court denies Defendants' motion to transfer this case to the Northern District of Texas.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to transfer is denied.  Plaintiffs' proposed second amended complaint is deemed filed as of the date of this order.

**IT IS SO ORDERED.**

Dated: November 30, 2015



Donna M. Ryu
United States Magistrate Judge